AO-106 (Rev: 06/09)-Application for Search Warrant

# UNITED STATES DISTRICT COURT
### for the
### Northern District of Oklahoma

**FILED**
FEB 2 1 2025
Heidi D. Campbell, Clerk
U.S. DISTRICT COURT

In the Matter of the Search of )
5705 South Vancouver Avenue, Tulsa, Oklahoma 74107 )   Case No. 25-mj-128-MTS
)
)   **FILED UNDER SEAL**
)

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

　　See Attachment "A"

located in the  Northern  District of  Oklahoma , there is now concealed *(identify the person or describe the property to be seized)*:

　　See Attachment "B"

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
☑ evidence of a crime;
☑ contraband, fruits of crime, or other items illegally possessed;
☑ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 922(O) | Unlawful Possession of a Machine Gun |

The application is based on these facts:
　　**See Affidavit of Special Agent Jonah Roop, attached hereto.**

☑ Continued on the attached sheet.
☑ Delayed notice of  30  days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

JONAH ROOP
Digitally signed by JONAH ROOP
Date: 2025.02.20 16:04:09 -06'00'

*Applicant's signature*

Jonah Roop, Special Agent ATF
*Printed name and title*

Subscribed and sworn to by phone.
Date: 2-21-2025

*Judge's signature*

City and state:  Tulsa, Oklahoma 　　　　Mark T. Steele, U.S. Magistrate Judge
*Printed name and title*

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| **In the Matter of the Search of 5705 South Vancouver Avenue, Tulsa, Oklahoma 74107** | Case No. _____<br><br>**FILED UNDER SEAL** |

**Affidavit in Support of an Application
Under Rule 41 for a Warrant to Search and Seize**

I, Special Agent Jonah Roop, being first duly sworn under oath, depose and state:

**Introduction and Agent Background**

1. I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a warrant to search 5705 South Vancouver Avenue, Tulsa, Oklahoma 74107, including outbuildings and vehicles on the curtilage premises, as further described in Attachment A, for the things described in Attachment B.

2. I am a federal law enforcement officer as defined under Rule 41(a)(2)(C) and am authorized to request this search warrant because I am a government agent who is engaged in enforcing federal criminal laws. I am within the category of officers authorized by the Attorney General to request a warrant. Your Affiant has been employed as a Special Agent in Tulsa, Oklahoma since 2023. I am currently assigned to the Dallas Field Division, Tulsa Field Office with the Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF). My duties with ATF include, but are not limited to, the investigation and enforcement of the illegal use,

possession, and trafficking of firearms. I also investigate criminal organizations, gangs, arson, and the illegal possession and use of explosives.

3. I have been an Intelligence Officer in the United States Air Force since May 2018, researching and communicating classified intelligence to inform worldwide operations. During my time as an Intelligence Officer, I primarily worked with the Air Force Special Operations Command under United States Special Operations Command. As a part of this organization, I utilized the full spectrum of intelligence to identify and locate threats to national security. I then provided that information to individuals who prosecuted those targets in a manner most advantageous to United States policy. In many instances, this led to the execution of missions directed by the President of the United States. I have a Bachelor of Science degree in Geospatial Science and a Master of Security Studies degree in Intelligence and Analysis.

4. As part of my duties as an ATF Special Agent, I investigate criminal violations in the Northern District of Oklahoma. This includes violations of Title 18 U.S.C. § 922(O).

5. I am familiar with the facts and circumstances of this investigation. The facts set forth in this affidavit are based on my personal observations, knowledge obtained from other law enforcement officers, my review of documents related to this investigation, conversations with others who have personal knowledge of the events described herein, and a review of open-source information. Because this affidavit is submitted for the limited purpose of establishing probable cause in support of the

application for a search warrant, it does not set forth every fact I or others have learned in the investigation.

6. Based on my training, experience, and the facts set forth in this affidavit, there is probable cause to believe that evidence of violations of Title 18 U.S.C. § 922(O), Unlawful Possession of a Machine Gun will be located at 5705 South Vancouver Avenue, Tulsa, Oklahoma 74107, including outbuildings and vehicles on the curtilage premises, and any person on the premises that could conceal firearms upon their person, as further described in Attachment A.

## Jurisdiction

7. "[A] warrant may be issued to search for and seize any property that constitutes evidence of a criminal offense in violation of the laws of the United States." 18 U.S.C. § 3103a.

8. The requested search is related to the following violations of federal law:

> Title 18 U.S.C. § 922(O) – It shall be unlawful for any person to transfer or possess a machinegun.

9. Venue is proper because the person or property described in this affidavit is located within the Northern District of Oklahoma. Fed. R. Crim. P. 41(b)(1).

## Firearm Offenses Background

10. "The term 'firearm' means (A) any weapon (including a starter gun) which will or is designed to or may readily be converted to expel a projectile by the action of an explosive; (B) the frame or receiver of any such weapon; (C) any firearm

3

muffler or firearm silencer; or (D) any destructive device. Such term does not include an antique firearm." 18 U.S.C. § 921(a)(3).

11. "The term 'ammunition' means ammunition or cartridge cases, primers, bullets, or propellant powder designed for use in any firearm." 18 U.S.C. § 921(a)(17)(A).

12. The term "firearm" means (1) a shotgun having a barrel or barrels of less than 18 inches in length; (2) a weapon made from a shotgun if such weapon as modified has an overall length of less than 26 inches or a barrel or barrels of less than 18 inches in length; (3) a rifle having a barrel or barrels of less than 16 inches in length; (4) a weapon made from a rifle if such weapon as modified has an overall length of less than 26 inches or a barrel or barrels of less than 16 inches in length; (5) any other weapon, as defined in subsection (e); (6) a machinegun; (7) any silencer (as defined in section 921 of title 18, United States Code); and (8) a destructive device. The term "firearm" shall not include an antique firearm or any device (other than a machinegun or destructive device) which, although designed as a weapon, the Secretary finds by reason of the date of its manufacture, value, design, and other characteristics is primarily a collector's item and is not likely to be used as a weapon. Title 18 U.S.C. § 5845(a).

13. In my training and experience, one way in which firearms traffickers and/or prohibited possessors gain access to firearms is through straw purchases. A straw purchase of a firearm occurs when a prohibited person or firearms trafficker enlists the help of a non-prohibited person, such as a non-convicted felon, to purchase a

4

firearm in a legal manner. This includes a purchase from a Federal Firearms Licensed (FFL) licensed dealer. When the non-prohibited purchaser or "straw purchaser" purchases a firearm, they fill out paperwork (ATF Form 4473) and state that they are buying the firearm for themselves. It is common for the straw purchaser of the firearm to be related to the person who ultimately receives the gun and/or firearms trafficker.

14. Through my training and experience, I am familiar with how ammunition is packaged for sale at retail establishments. Based on my training and experience in firearms, I know retailers typically sell pistol ammunition in quantities of 20, 25, 50, and quantities in excess of 50 rounds.

15. I've also learned through my training and experience that an eTrace provides information in reference to the purchase of a firearm. The eTrace provides purchaser information, recovery information, dealer information, and administration information.

16. Investigative databases used by law enforcement to conduct person searches, find addresses, phone numbers and other information include TLO, Leads Online, and Accurint. These databases contain a variety of information such names, addresses, phone numbers, and associates to identify an individual and details about that individual to aid in investigations.

17. In my training and experience, individuals engaged in illegal firearms modification keep records in the form of text messages, videos, pictures, and other electronic data. These records include but are not limited to where they obtained the

firearm and instruction manuals to convert semi-automatic firearms to fully automatic.

## Probable Cause

18. On February 1, 2025, TPD Officer Allen Weckhorst was radio assigned to investigate a report of a disturbance at Lowes Home Improvement located at 7225 South Olympia Avenue, Tulsa, Oklahoma 74132. Call notes indicated the suspect was a white male, in a red, four-door Dodge Ram pickup truck, threatening employees and refusing to leave the area. According to dispatch notes, Lowes had a no trespassing letter on file with the city of Tulsa at the time of this incident.

19. Upon Officer Weckhorst's arrival, he saw from a distance the suspect's truck parked extremely close to the front doors. The truck appeared to be possibly touching the front doors with its bumper. When Officer Weckhorst approached, he saw the driver put the truck in reverse, back up several yards from the building, then stop.

20. Officer Weckhorst approached the truck on foot from the rear of the truck. He saw a white male subject seated in the driver's seat who appeared to be talking to himself. Officer Weckhorst asked the man to step out of the truck and he did. Officer Weckhorst recognized the man was wearing what appeared to be a military-style ballistic vest. The vest had numerous pouches on the front. Officer Weckhorst observed the pouches on the front of the vest contained multiple spare AR-15 style rifle magazines. Officer Weckhorst also saw the suspect was wearing an unconcealed holster on his right thigh with a Glock handgun inside it.

21. The man, later identified as JOSEPH CHAVOYA, was asked to turn and face his truck. CHAVOYA initially complied then turned back towards Officer Weckhorst and rambled about how his water was shut off and his rights taken. This was a very dangerous situation as CHAVOYA's level of cooperation appeared fluid. He stated Officer Weckhorst was not going to touch him, and it appeared any attempt to control him, while alone, could lead to an escalation of the situation and necessitate lethal force. CHAVOYA's anger was evident as he began demanding to know where Officer Weckhorst's backup was and claimed it was going to take an army. After some time, CHAVOYA eventually faced his truck, as he had originally been asked to do, and told Officer Weckhorst he could take his "shit." It appeared he was referencing his firearm. Chavoya told Officer Weckhorst he could not touch him. Officer Weckhorst took the opportunity to remove the firearm from CHAVOYA's holster. Officer Weckhorst's supervisor then arrived on scene.

22. Officers gave commands for the suspect to be taken into custody but he refused all their commands. Officers deployed tasers on CHAVOYA three times but the deployments were unsuccessful. It then took multiple officers to bring CHAVOYA to the ground and place him in handcuffs. Officer Weckhorst was notified by another officer that CHAVOYA was read his Miranda rights and CHAVOYA declined to make a statement. CHAVOYA stated he was a member of the Sumac Native American tribe. Once CHAVOYA was in custody, officers spoke with the reporting person and witness. Officers learned the following.

23. V.R stated he was about to let his employees off when he noticed a vehicle parked at the front door and that the man started talking to witness T.W. V.R stated the suspect bumped the vehicle into the front doors of the business. V.R. indicated to Officer Weckhorst that the incident would have all been captured on video and gave Officer Weckhorst the information asset protection employee's information and name, listed witness E.M.

24. T.W. reported the man was aggressive with him and was cussing at him. According to T.W., he was very scared, and the man asked for a shovel and other items. T.W. stated he recognized the man was wearing a vest and believed he might have a weapon on him. T.W. told officers the man attempted to gain access to the building through the doors.

25. Officer Weckhorst sent E.M. an Axon Community Request for video footage of this incident.

26. Officers located a black AR-15 style rifle in the front seat of the vehicle and secured it for public safety reasons. After Chavoya was arrested and taken into custody, Chavoya's truck was towed from the scene. The AR-15 style rifle was booked into property as evidence. Upon booking the AR-15 style rifle into evidence, Officer Weckhorst examined the rifle and found it to have characteristics consistent with that of a fully automatic rifle. An additional hole and pin were located above the safety selector of the firearm. Upon separating the upper and lower receivers, Officer Weckhorst found what appeared to be a full-auto sear next to the safety mechanism. A full-auto sear is a combination of parts designed and intended for use

in converting a weapon to shoot automatically more than one shot, without manual reloading, by a single function of the trigger. Additionally, the safety selector lever had the ability to flip 180 degrees from the safe position to the position normally utilized for fully automatic fire in this type of firearm.

27. The pistol on CHAVOYA's leg was determined to be a Glock 19C which was both magazine and chamber loaded with 9mm ammunition.

28. In the front pouches of CHAVOYA's vest, Officer Weckhorst located five loaded spare magazines for an AR-15 rifle. These magazines appeared to have green-tipped projectiles which are generally understood to be steel-core ammunition. There was also black-tipped projectiles which were possibly designed to be armor piercing. One projectile appeared to be red-tipped, indicating a possible tracer projectile.

29. Ten "stripper clips" of ammunition were located on CHAVOYA's person. The "stripper clips" contained several tens of additional rounds of ammunition.

30. A small notepad was recovered and appeared to display several writings in an unknown or imagined language.

31. On February 5, 2025, SA Sterling Juarez and I examined the previously mentioned firearm and identified it as a Matrix Aerospace Corporation M556-SC multiple caliber rifle bearing serial number SC556-06863. We also observed that there was a third hole drilled above the safety selector on the firearm and a part installed inside the receiver in a location corresponding to that hole which we recognized as a possible auto-sear. A preliminary field functionality check of the

9

firearm indicated that it is presumptively capable of firing more than a single round of ammunition per single function of the trigger.

32. On February 10, 2025, I received a National Firearms Registration and Transfer Record Search Certificate that identified no evidence of the firearm being registered to CHAVOYA.

33. On February 12, 2025, SA Juarez contacted Matrix Aerospace Corporation and determined the firearm was originally manufactured as a semi-automatic lower receiver.

34. On February 12, 2025, I obtained a Firearms Trace Summary (Trace Number: T20250059206) for the firearm. The summary confirmed the firearm was originally sold as a receiver, not a machinegun.

35. On February 18, 2025, I reviewed Tulsa County District Court appearance bond paperwork with barcode 1060860058 for CM-2025-461 filed February 10, 2025. This lists CHAVOYA's current address as "5705 Vancouver Ave Tulsa OK 74107." After contacting an officer at the Tulsa County probation office, I received confirmation that CHAVOYA's ankle monitor was located at this residence the majority of the day.

36. Based on my training and experience, I have found that persons possessing unlawful firearms will hide firearms, ammunition and receipts/invoices related to the acquisition and disposition of firearms in all areas of their property, including but not limited to their residence and vehicles. Additionally, individuals who possess unlawful firearms, destructive devices, and machineguns often maintain possession

10

of their illegally possessed firearms and ammunition for long periods of time, often in excess of one year.

37. In my training and experience, I know individuals will often store their firearms in close proximity to themselves, such as in their residence, inside safes or lockboxes, on their person, or in their vehicles.

38. Based on my training, experience, and the life of the firearm since manufacturing, I believe CHAVOYA may possess the equipment and knowledge to modify firearms to be capable of firing more than a single round of ammunition per single function of the trigger.

## Conclusion

39. Based on the information above, I submit that there is probable cause to search 5705 South Vancouver Avenue, Tulsa, Oklahoma 74107, including outbuildings and vehicles on the curtilage premises, as further described in Attachment A, and seize the items described in Attachment B.

40. I request to be allowed to share this affidavit and the information obtained from this search with any government agency, to include state and local agencies investigating or aiding in the investigation of this case or related matters, and to disclose those materials as necessary to comply with discovery and disclosure obligations in any prosecutions from this matter.

Respectfully submitted,

JONAH ROOP
Digitally signed by JONAH ROOP
Date: 2025.02.20 16:04:36 -06'00'

Jonah Roop
Special Agent
Bureau of Alcohol, Tobacco, Firearms
& Explosives

Subscribed and sworn to by phone on February 21, 2025

MARK T. STEELE
UNITED STATES MAGISTRATE JUDGE

## ATTACHMENT A

### Property to be Searched

The property to be searched is a residence located at 5705 South Vancouver Avenue, Tulsa, Oklahoma 74107, further described as a single-story duplex with light-blue siding.

The property to be searched includes the residence, outbuildings, and vehicles on the curtilage premises.



## ATTACHMENT B

### Particular Things to be Seized

All items that constitute evidence, instrumentalities, contraband of violations of Title 18 U.S.C. § 922(O):

a. Firearms presumptively capable of firing more than a single round of ammunition per single function of the trigger.

b. Ammunition that is capable of being fired from a multi-caliber AR-15 style rifle.

c. Parts and accessories used in conjunction with firearms presumptively capable of firing more than a single round of ammunition per single function of the trigger

d. Electronic devices including cellular telephones, computers, tablets, and digital storage devices.

e. Documents establishing Joseph CHAVOYA as a resident of 5705 South Vancouver Avenue to include but not limited to: personal mail, checkbooks, personal identification, notes, other correspondence, financial documents, keys, photographs, leases, and bills.

f. Documents, receipts, or evidence related to the purchase, possession, or act of obtaining firearms presumptively capable of firing more than a single round of ammunition per single function of the trigger.